**In re ESTATE OF USIAK.**

[Cite as *In re Estate of Usiak,* 172 Ohio App.3d 262, 2007-Ohio-3038.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 05 MA 140.

Decided June 15, 2007.

Norman C. Usiak, Frank Joseph Usiak, Rita McNamara, and Susan Marie Harchelroad, pro se.

WAITE, Judge.

{¶ 1} Appellants in this matter are the beneficiaries and the named executor in the will of Norman J. Usiak. The will left all assets to the testator's wife, Margaret Usiak, and if she predeceased him (which was the case), to his four adult children in equal shares. The will also named Margaret as the executor of the estate and listed Norman C. Usiak ("Norman C."), one of the decedent's sons, as the alternate executor. Norman C. is an attorney licensed in Maryland.

{¶ 2} Norman J. Usiak's funeral was held on May 18, 2005. The following day, May 19, 2005, Norman C. and his sister Rita McNamara attempted to open a probate estate file in the Mahoning County Court of Common Pleas, Probate Division. Court authorities, including Magistrate Richard Machuga, attempted to prevent this from happening unless appellants obtained local counsel to assist them and unless they posted bond. Appellants protested because the will did not

require a bond and because no statute or rule exists requiring an attorney to be involved. Although Norman C. is a licensed attorney in Maryland, he was not attempting to act as an attorney in his father's probate estate, but rather desired only to act as executor of the estate.

{¶ 3} Appellants were referred to Magistrate Richard Burgess, who argued with them and eventually used profanity. Burgess asserted that there was a local unwritten policy, not a statute or rule, establishing that an estate could not be opened without an attorney if there were multiple next of kin. After apparently enduring even further obstructive behavior from the court staff, appellants were eventually permitted to file the application to administer the estate.

{¶ 4} A hearing was scheduled for July 14, 2005, to determine whether bond could be waived pursuant to the terms of the will and to determine whether Norman C. needed to obtain local counsel in order to act as fiduciary of the estate. All four beneficiaries, including Norman C., attended the July 14, 2005 hearing.

{¶ 5} The probate judge held that there were local rules requiring that bond must be posted in all probate cases and that the executor must retain counsel when there is more than one next of kin. The judge determined that Norman C. refused to post bond, and the court overruled his application to administer the estate. While the court's journal entry states that Norman C. refused to post a bond of $190,000, no bond amount or terms of payment were discussed at the hearing. The court appointed local attorney Andrew Bresko as administrator with the will annexed and ordered him to post only a $40,000 bond.

{¶ 6} Appellants are appealing the probate judge's local unwritten policy that when there is more than one next of kin or beneficiary, the executor of the estate must be represented by counsel to avoid engaging in the unauthorized practice of law. They are also appealing the court's after-the-fact requirement of a $190,000 bond because (1) the will dispensed with the bond requirement, (2) all the beneficiaries waived the need for a bond, and (3) the amount of $190,000 was never mentioned at the July 14, 2005 hearing. Finally, they are appealing the appointment of a local attorney as fiduciary without the court allowing the beneficiaries any input into the decision.

{¶ 7} It is clearly error for any member of the court or its staff to assert that a personal representative *must* engage the services of an attorney or else will be guilty of practicing law without a license. There is no basis for this conclusion in Ohio statutes, rules, or caselaw. Furthermore, the probate court's local rules do not contain these requirements, and it is unclear why two magistrates and the probate judge repeatedly insisted that these rules existed. The court's imposition of a $190,000 bond is also untenable, in light of the fact that the record shows

that the court-appointed administrator was required to post only a $40,000 bond and given that the will dispensed with the bond requirement entirely. Further, all the beneficiaries waived any need for a bond. This appeal is being prosecuted by all four beneficiaries, who all agree that Norman C. should be the personal representative of the estate without bond. Based on the clear errors in probate court, the judgment is vacated, and the probate court is ordered to issue letters testamentary to Norman C., who is to serve without bond.

## HISTORY OF THE CASE

{¶ 8} The facts behind this case have already been presented. The record, such as it is, consists of the few court filings and the recreated record, pursuant to App.R. 9(C), presented by appellants, along with a few minor corrections submitted by the probate judge. The App.R. 9(C) prepared record will be cited as an accurate statement of the facts of this case. Any minor corrections made by the probate judge will be noted.

{¶ 9} Norman J. Usiak died on May 15, 2005, at age 79. The funeral was held on May 18, 2005. On May 19, 2005, Norman C. and Rita arrived at the Mahoning County Court of Common Pleas, Probate Division, to file the initial paperwork to open a probate estate for their late father. Norman C. is an attorney in Maryland, and Rita is a teacher in the Youngstown school district. They had their father's will with them. They also had the death certificate of their mother, who had predeceased Norman J. Usiak by five years. The brief, three-page will named the decedent's wife as personal representative of the estate and Norman C. as the alternate. The will named the four surviving children as the beneficiaries, with equal shares, if the decedent's wife predeceased him.

{¶ 10} Upon arriving at the probate court, Norman C. and Rita asked for the forms to probate a will, and they were directed to talk to Magistrate Richard Machuga. After a brief meeting, Machuga told them that they would need an attorney. Machuga told them that they had to have an attorney because Norman C. would be representing not only himself but his siblings as well and would be practicing law without a license. Machuga said that he himself could be disbarred if he gave them the application to open the estate and allowed Norman C. to apply as the personal representative. Norman C. told the magistrate that this was not correct and asked to see his supervisor or superior.

{¶ 11} Norman C. then attempted to get the forms from the court clerk, but the clerk refused. Norman C. asked Machuga to cite his authority for the idea that serving as a personal representative was tantamount to engaging in the practice of law. Machuga had no authority for his statement. Frustrated, Norman C. then called him "an idiot" and again asked for the probate forms. Machuga told Norman C. that he could get the forms, but he was denied again

when he returned to the clerk. Finally, Machuga told the clerk to give him the forms.

{¶ 12} Norman C. and Rita filled out the forms and were told to meet with another magistrate. Magistrate Richard Burgess arrived and took them to a conference room. Burgess reiterated that they could not submit the will for probate or act as personal representative without an attorney. Burgess first stated that this was law, then said it was a local rule, and ultimately concluded that it was an unwritten court "policy." During these exchanges, Burgess threatened to call the police and to hold both Norman C. and Rita in contempt and told them to "sit the f**k down." Judge Maloney, in one of his few corrections to the record, states that Burgess did not say "don't f**k with me," but rather said "sit the f**k down." Regardless, it is apparent that the judge did not personally witness this event. Burgess eventually requested assistance from the sheriff's deputies and explained his view of the events. When Norman C. explained to the deputies that Burgess had conveniently forgotten to mention that he had let the "f**k" word slip out, they appeared considerably less alarmed by the situation.

{¶ 13} While the deputies were still present, Burgess then told Norman C. that he would not be appointed executor without posting a bond. Norman C. stated that this was an issue that could be decided only after the initial paperwork was filed, because bond could not be set until after the will was accepted for probate, and in this case, the will specifically did not require a bond. Burgess said that Norman C. could file the papers, but that a cash bond would need to be paid, and the court did not accept checks or any payment other than cash. Burgess stated that the "cash only" requirement was another unwritten policy of the court.

{¶ 14} The will was admitted to probate on May 19, 2005.

{¶ 15} Also on May 19, 2005, Burgess filed an incident report as a way to present his perspective to the probate judge of his encounter with appellants. This document was not sent to appellants. Burgess admitted using the "f**k" word, but stated that he had later apologized for it.

{¶ 16} On June 8, 2005, appellants received notice that a hearing would be held on July 14, 2005, to deal with issues concerning the application to administer the will. All four beneficiaries attended the hearing, including Norman C. (of Boonsboro, Maryland), Rita McNamara (of Canfield, Ohio), Frank J. Usiak (of Weddingtown, North Carolina), and Susan Marie Harchelroad (of Pittsburgh, Pennsylvania). The probate judge started the hearing 25 minutes late, without explanation. He first asked appellants whether they knew why the hearing was called. Apparently without waiting for a response, he then stated, "There is no bond posted." Appellants replied that they did not wish a bond to be posted and

that the will waived the bond requirement. The judge told them that there was a local rule that bond must be posted in all circumstances.

{¶ 17} At this point, Norman C. asked whether the hearing was being recorded. The judge said no, and told the parties that they should have arranged for this themselves.

{¶ 18} The judge then asked why they had not hired an attorney. Norman C. stated that R.C. 2109.03 permitted, but did not require, the fiduciary of the estate to hire an attorney, since it stated that the fiduciary shall file "the name of the attorney, if any." The judge replied that an attorney was required, also citing R.C. 2109.03, except he left out the words "if any." Appellants all stated that they did not want to have an attorney involved, and Norman C. stated that he was not going be serving as counsel but only as the personal representative of the estate. Norman C. was also willing to make assurances that all of his father's assets that were in the county at the time of his death would remain in Mahoning County, as required by R.C. 2109.21.

{¶ 19} The judge then individually required each appellant to take an oath and questioned them about the value of their father's estate. They stated that their father had a modest home and a modest car and that they were not aware of the state of his finances.

{¶ 20} The judge then stated that "in families 'like ours' there was always one sibling that 'just wanted to hire a lawyer (and get things over with).'" (Nov. 21, 2005 statement, p. 7.) Norman C. told the judge that his father was a simple man with simple instructions in his will and that the four surviving children were only trying to carry out their father's wishes. The judge insisted that there be a bond, but did not specify the amount or when it would need to be paid. The judge subsequently ruled that he was denying Norman C.'s application and abruptly dismissed appellants and went into his chambers.

{¶ 21} The court's journal entry is dated July 18, 2005. The journal entry misstates Ohio law and the court's own local rules by saying that R.C. 2109.04 requires appellants to post a bond (it does not) and that Loc.R. 78.7(C) requires all out-of-state fiduciaries to post a bond (it does not). The journal entry notes that it was the court's longstanding "position" that it would not allow a fiduciary to proceed without counsel when there was more than one next of kin or beneficiary because this would result in the practice of law without a license. The journal entry states that the court required an attorney to be named in all such cases. The probate judge overruled Norman C.'s application to administer the estate for the reason that he refused to post a bond of $190,000. This journal entry is the first place in the record that this bond amount appears. The court further ordered attorney Andrew Bresko to serve as administrator with will

attached, upon the posting of a $40,000 bond. Appellants' timely appeal followed on August 12, 2005.

{¶ 22} Again, the record in this case consists of the probate court filings and a recreated statement of events, including the July 14, 2005 hearing, pursuant to App.R. 9(C). Appellants submitted this statement of the record to the probate court on November 21, 2005, and the probate court filed minor amendments and corrections on December 13, 2005, pursuant to App.R. 9(C) and (E). Appellants submitted a revised statement of the record on December 27, 2005, attempting to incorporate the probate court's changes. This court issued a journal entry on January 3, 2006, accepting appellants' November 21, 2005 filing and the probate court's December 13, 2005 changes as a statement of the record in this case, while excluding from the record the probate judge's extraneous commentary and legal analysis.

{¶ 23} An order overruling an application for letters testamentary is a final, appealable order. *In re Estate of Geanangel* (2002), 147 Ohio App.3d 131, 137, 768 N.E.2d 1235; *In re Estate of Meloni*, 11th Dist. No. 2003–T–0096, 2004-Ohio-7224, 2004 WL 3090190; R.C. 2505.02(B)(4).

## ASSIGNMENT OF ERROR NO. 1

{¶ 24} "The probate court's 'position' (*i.e.* 'where there are more than one next of kin and one or more beneficiaries, to allow the fiduciary to proceed without counsel would be allowing that fiduciary to represent the next of kin or beneficiary as counsel and to therefore condone the unauthorized practice of law') is contrary to the law of Ohio, and the court's denial of the application for authority to administer in this case *unless the applicant has retained legal counsel* was an improper condition."

{¶ 25} Appellants argue that R.C. 2109.03 permits, but does not require, a fiduciary in a probate estate to obtain the services of counsel. R.C. 2109.03 states:

{¶ 26} "At the time of the appointment of a fiduciary, such fiduciary shall file in the probate court the name of the attorney, if any, who will represent him in matters relating to the trust. After the name of an attorney has been filed, notices sent to such fiduciary in his official capacity shall also be sent by the court to such attorney who may sign waiver of service of any or all of such notices upon him. If the fiduciary is absent from the state, such attorney shall be the agent of the fiduciary upon whom summonses, citations, and notices may be served. Any summons, citation, or notice may be served upon the fiduciary by delivering duplicate copies thereof to the attorney designated by him. No probate judge shall permit any person to practice law in the probate court for compensation,

unless he has been admitted to the practice of law within the state. This section does not prevent any person from representing his own interest in any estate, matter, action, or proceeding."

{¶ 27} Norman C. contends, and the other appellants concur, that the probate judge in this case rejected his application to administer the estate of his late father based on erroneous and unsupportable legal principles and that this court should reverse the probate court's judgment.

{¶ 28} Appellants are correct. The Ohio Supreme Court has clearly ruled on this issue: "It cannot be questioned that an executor has the right to employ counsel to assist in the performance of various duties in the administration of an estate. The employment of counsel, however, is not mandatory as the executor may perform all such duties." *In re Estate of Deardoff* (1984), 10 Ohio St.3d 108, 108, 10 OBR 434, 461 N.E.2d 1292. The Supreme Court's logic is apparent from the wording of R.C. 2109.03, which states that a fiduciary (which includes an executor) must identify an attorney "if any" who will represent him or her. The phrase "if any" clearly indicates that the retention of counsel is discretionary. Other courts have noted that "it is well settled that executors and administrators have discretion in selecting counsel to represent them in their role as fiduciary." *In re Estate of Craig* (1993), 89 Ohio App.3d 80, 83, 623 N.E.2d 620. Since the executor, administrator, or personal representative has the option whether or not to employ counsel, the probate court cannot refuse to issue letters of administration simply because the person does not choose to retain the services of an attorney.

{¶ 29} In general, a probate court's decision regarding the granting of letters of administration in an estate is reviewed for abuse of the court's discretion. *In re Estate of Henne* (1981), 66 Ohio St.2d 232, 20 O.O.3d 228, 421 N.E.2d 506. A court abuses its discretion when its decision is arbitrary, unreasonable, or unconscionable. *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 320, 574 N.E.2d 1055. Furthermore, abuse of discretion "connotes more than an error of judgment; it implies a decision which is without a reasonable basis, one which is clearly wrong." *Angelkovski v. Buckeye Potato Chips Co., Inc.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280, paragraph three of the syllabus. If a court enforces a local court rule or policy that is diametrically opposed to clear Ohio State Supreme Court caselaw and statutory law, that would constitute an abuse of discretion.

{¶ 30} From the outset, it is clear that even though various officers of the probate court referred to a local rule that required the fiduciary to obtain the services of counsel, we have not been able to locate any such rule in the published local rules of the Mahoning County Court of Common Pleas, Probate Division.

One of the probate court magistrates stated that this was actually an unwritten policy rather than a written rule. In a recent case that also involved the Mahoning County Court of Common Pleas, Probate Division, this court held that the probate court could not rely on unwritten local rules to govern its affairs: "[T]here is no provision in the Rules of Superintendence for purely oral local rules. Sup.R. 5(A)(1) does allow courts to adopt written local rules of practice that do not conflict with other rules established by the Ohio Supreme Court. Sup.R. 5 also provides for a hearing and appropriate notice of the rule, and filing the rule with the Supreme Court. Obviously, if the rules must be filed with the Supreme Court, they must be written." *In re Estate of Traylor*, 7th Dist. Nos. 03 MA 253, 03 MA 254, 03 MA 255, 03 MA 256, 03 MA 257, 03 MA 258, 03 MA 259, and 03 MA 262, 2004-Ohio-6504, 2004 WL 2808402, ¶ 19.

{¶ 31} This court has also ruled that the Mahoning County Court of Common Pleas, Probate Division, cannot attempt to expand its powers through the use of local rules that conflict with state law. *In re Testamentary Trust Created Under Last Will & Testament of Ford*, 7th Dist. Nos. 04 MA 255 and 04 MA 256, 2005-Ohio-5121, 2005 WL 2373730.

{¶ 32} Part of the court's rationale for requiring Norman C., as executor, to obtain the services of an attorney was to ensure that all the beneficiaries could be represented by counsel, rather than allowing the fiduciary to try to represent them in an unauthorized manner. There is some basis for the probate judge to be concerned about the unauthorized practice of law in this context, as R.C. 2109.03 specifically mentions the subject: "No probate judge shall permit any person to practice law in the probate court for compensation, unless he has been admitted to the practice of law within the state." Yet the very next sentence in R.C. 2109.03 states: "This section does not prevent any person from representing his own interest in any estate, matter, action, or proceeding." It should be apparent that representing one's own interest, as a fiduciary, beneficiary, or in some other capacity in probate proceedings, does not automatically equate with practicing law.

■ {¶ 33} The record here reflects a fundamental misunderstanding of the function of a fiduciary and the role of the fiduciary's attorney in a testamentary estate. It is axiomatic that the position of executor and the position of attorney for the estate are two completely distinct offices and perform distinct functions in a probate estate. *In re Estate of Duffy*, 148 Ohio App.3d 574, 2002-Ohio-3844, 774 N.E.2d 344, ¶ 7.

{¶ 34} *In re Deardoff* states: "R.C. 2109.03 provides that upon court appointment, the fiduciary has discretion to select counsel who will represent him during the administration of the estate. Under this statutory scheme, it is important to note that the attorney represents the fiduciary, not the estate." *Deardoff*, 10

Ohio St.3d at 109, 10 OBR 434, 461 N.E.2d 1292. Since the attorney represents the fiduciary and not the beneficiaries, it does not matter how many beneficiaries there are, or who they are. The trial court's apparent view that fiduciaries necessarily act as attorneys and its presumption that the fiduciary's attorney necessarily represents the beneficiaries seem to underscore some serious difficulties in the practice of the probate court.

{¶ 35} An executor, administrator, or other personal representative of a testamentary estate is a fiduciary, not an attorney. R.C. 2109.01 defines a "fiduciary" as "any person * * * appointed by and accountable to the probate court and acting in a fiduciary capacity for any person, or charged with duties in relation to any property, interest, trust, or estate for the benefit of another." A fiduciary relationship is "one in which special confidence and trust is reposed in the integrity and fidelity of another, resulting in a position of superiority or influence acquired by virtue of the special trust." *Laurel Valley Oil Co. v. 76 Lubricants Co.*, 154 Ohio App.3d 512, 2003-Ohio-5163, 797 N.E.2d 1033, ¶ 40. The fiduciary duties of an executor are primarily to collect the estate assets, pay debts, and make distributions. The executor also owes various duties to the beneficiaries of the estate, duties involving keeping proper accounts, giving timely notice, preserving assets, and avoiding the commingling of property, as well as basic duties of trust and loyalty. Purposefully absent from this list of fiduciary duties is the duty to give legal advice, because that is the exclusive province of those duly admitted to the legal profession. *Pietz v. Toledo Trust Co.* (1989), 63 Ohio App.3d 17, 24, 577 N.E.2d 1118.

{¶ 36} We cannot deny that a fiduciary may be tempted at times to disobey the law by giving legal advice. *Green v. Huntington Natl. Bank*, 4 Ohio St.2d 78, 33 O.O.2d 442, 212 N.E.2d 585, paragraph two of the syllabus. Nevertheless, a fiduciary does not engage in the unauthorized practice of law simply by performing the functions and duties of a fiduciary, even though those functions and duties are sometimes similar to those performed by attorneys at law. *Dayton Supply & Tool Co., Inc. v. Montgomery Cty. Bd. of Revision*, 111 Ohio St.3d 367, 2006-Ohio-5852, 856 N.E.2d 926, ¶ 8; see, also, *Green*, 4 Ohio St.2d at 81, 33 O.O.2d 442, 212 N.E.2d 585; *Judd v. City Trust & Sav. Bank* (1937), 133 Ohio St. 81, 10 O.O. 95, 12 N.E.2d 288, paragraph three of the syllabus. Nor could the probate court simply assume that Norman C. necessarily would be practicing law by acting as executor. The judge had no legitimate reason for rejecting the application to administer the estate on the basis of unauthorized practice of law.

{¶ 37} Appellants' second argument is that the probate court erred in requiring a bond in all cases because Ohio law does not always require a bond in

every probate estate, particularly when the will waives the bond requirement. Once again, appellants are correct, although some explanation is in order. R.C. 2109.04(A) states:

{¶ 38} "(1) Unless otherwise provided by law, every fiduciary, prior to the issuance of his letters as provided by section 2109.02 of the Revised Code, shall file in the probate court in which the letters are to be issued a bond with a penal sum in such amount as may be fixed by the court, but in no event less than double the probable value of the personal estate and of the annual real estate rentals which will come into such person's hands as a fiduciary. * * *

{¶ 39} "(2) Except as otherwise provided in this division, *if the instrument creating the trust dispenses with the giving of a bond, the court shall appoint a fiduciary without bond,* unless the court is of the opinion that the interest of the trust demands it. If the court is of that opinion, it may require bond to be given in any amount it fixes." (Emphasis added.)

{¶ 40} According to the statute, a bond is generally required unless the "instrument creating the trust," which in this case is the decedent's will, dispenses with the bond requirement. If the will does not require a bond, then the court "shall appoint a fiduciary without bond, unless the court is of the opinion that the interest of the trust demands it." The word "shall" in a statute normally refers to a mandatory duty. *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus. Therefore, if the will does not require a bond, the presumption is that the court will not order a bond, unless it specifically finds that other factors necessitate a bond. Even under those circumstances, the bond amount would be discretionary with the court.

{¶ 41} We are mystified, to say the least, why the probate court would have a policy or unwritten rule that bond is required in absolutely every probate case when the aforementioned statutes clearly indicate that no bond is required when the will dispenses with the bond.

{¶ 42} There may be an indication in the record that Norman J. Usiak's probate estate was estimated to be worth $95,000, and the court may have imposed double this amount as a bond. There is no indication that the court considered any factor in imposing this amount other than its own presumed rule that there must always be a bond posted. Although the probate court specifically says it relied on a local rule requiring a bond in all such cases, we have not been able to locate this local rule, and if there were such a rule, it would conflict with R.C. 2109.04(A)(2). The probate court cannot automatically impose a bond when the clear statutory requirement is for the court to waive the bond requirement if the will waives the need for a bond. The only reason for imposing a bond in such

situations is if the court makes a finding that the "interest of the trust demands" a bond. R.C. 2109.04. The probate court cannot artificially create this demand by simply having an unwritten rule that bond is always required.

{¶ 43} It appears that the probate judge was concerned because Norman C. was not a resident of Ohio and believed that this fact gave rise to a bond requirement. R.C. 2109.21(B)(1) states:

{¶ 44} "(B)(1) To qualify for appointment as executor or trustee, an executor or a trustee named in a will or nominated in accordance with any power of nomination conferred in a will, may be a resident of this state or, as provided in this division, a nonresident of this state. To qualify for appointment, a nonresident executor or trustee named in, or nominated pursuant to, a will shall be an individual who is related to the maker of the will by consanguinity or affinity, or a person who resides in a state that has statutes or rules that authorize the appointment of a nonresident person who is not related to the maker of a will by consanguinity or affinity, as an executor or trustee when named in, or nominated pursuant to, a will. No such executor or trustee shall be refused appointment or removed solely because the executor or trustee is not a resident of this state.

{¶ 45} "The court may require that a nonresident executor or trustee named in, or nominated pursuant to, a will assure that all of the assets of the decedent that are in the county at the time of the death of the decedent will remain in the county until distribution or until the court determines that the assets may be removed from the county."

{¶ 46} The statute clearly allows for out-of-state executors and specifically states that letters of administration cannot be denied simply because the executor does not reside in Ohio. The statute allows the court to demand an assurance that all the decedent's assets will remain in Ohio, and Norman C. gave that assurance. The probate court's insistence that there was some local rule with more severe bond requirements for out-of-state executors is contradicted by the court's local rules themselves. Loc.R. 78.7(C) merely says that a bond "may" be required for an out-of-state executor or fiduciary, not that a bond must be imposed.

{¶ 47} There are other reasons for finding an abuse of discretion in denying Norman C.'s application to administer the estate for failure to post a bond. First, there is no indication that the judge told any of the appellants what the amount of the bond would be or how long Norman C. had to post the bond. The amount of $190,000 simply appeared in the court's journal entry, with no opportunity for Norman C. to actually post such a bond. The probate court's journal entry discussing this bond also sua sponte appoints attorney Bresko and requires him to post a much smaller $40,000 bond. However, since Bresko was not appointed under the terms of the will, this appointment falls under the

requirements of R.C. 2109.04(A)(1), which requires a bond in an amount at least double the probable value of the estate. While it can be deduced from this that the court actually believed the estate to be worth $20,000 or less, as any estimate more than this would have required a higher bond for Bresko, the record reflects no possible rational reason for the judge to have ordered Norman C. to post a discretionary bond of $190,000, which is more than nine times what the court must have estimated as the maximum probable value of the estate.

{¶ 48} This matter comes to us on an agreed record pursuant to App.R. 9. It cannot be disputed that the facts as they present themselves here are egregious. It is profoundly disturbing that this agreed record reflects that various members of the probate court acted unprofessionally, rudely, and without any legal basis in their brief interaction with appellants. These surviving children buried their father on May 18, 2005. Close on the heels of this loss, they had to experience the appalling behavior of two probate court magistrates, as well as the arbitrary and puzzling actions of the court itself. Appellants' sole purpose for their interaction with the probate court was to initiate the probate proceedings for their late father's admittedly small estate. It is understandable that the surviving children might be emotional and upset, particularly in light of the heavy-handed and indefensible tactics of the probate court, and particularly when we consider that their first confrontation occurred the day after their father's funeral. What is not understandable is why the probate court and its employees would place unnecessary obstacles in their path when both the terms of their father's will and Ohio law clearly allowed them to have Norman C. appointed as personal representative of the estate without bond.

{¶ 49} The law presents the court with a procedure to be followed if the executor named in the will is unwilling or unable to take on the role. R.C. 2113.05 states:

{¶ 50} "If no executor is named in a will and no power as described in section 2107.65 of the Revised Code is conferred in the will, or *if the executor named in a will or nominated pursuant to such a power dies, fails to accept the appointment, resigns, or is otherwise disqualified* and the holders of such a power do not have authority to nominate another executor or no such power is conferred in the will, or if such a power is conferred in a will but the power cannot be exercised because of the death of a holder of the power, *letters of administration with the will annexed shall be granted to a suitable person or persons, named as devisees or legatees in the will, who would have been entitled to administer the estate if the decedent had died intestate, unless the will indicates an intention that the person or persons shall not be granted letters of administration.* Otherwise, the court shall grant letters of administration with the will annexed to some other suitable person." (Emphasis added.)

{¶ 51} Thus, even if Norman C. could not act as executor, the court was required to determine whether to grant letters of administration to other Ohio next of kin before simply appointing a local attorney as administrator. The statute says that such persons named in the will, and who would be entitled to administer the estate if the decedent had died intestate, "shall be granted" letters of administration, unless the will provides otherwise. R.C. 2113.06 states that letters of administration in an intestate estate are granted first to the surviving spouse, if a resident of Ohio, and then to any next of kin who are residents of Ohio. It appears that at least one of the decedent's four children is a resident of Ohio (Rita lives in Canfield) and would have priority to be appointed as administrator even if Norman C. was disqualified. The probate court must actually determine the unsuitability of any Ohio next of kin who are named in the will before moving to other potential nonfamily administrators. *In re Estate of Pfahler* (1989), 64 Ohio App.3d 331, 332, 581 N.E.2d 602. The probate judge failed to do this and sua sponte appointed Bresko as administrator without even discussing this at the hearing.

{¶ 52} Based on the errors committed by the probate court and its staff in this case, the court's judgment is vacated. The court is hereby ordered to issue letters testamentary to Norman C. without bond. The cause is remanded to the probate court for further proceedings consistent with this opinion.

Judgment vacated
and cause remanded.

DeGENARO, P.J., and VUKOVICH, J., concur.