[Cite as *Minshall v. Estate of Minshall*, 2024-Ohio-3428.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| Werner E. Minshall, et al. | Court of Appeals No. E-21-059 |
| Appellees | Trial Court No. 2014-1-218A |
| v. | |
| Rosalyn Ahner, executor of the Estate of William E. Minshall, deceased | **DECISION AND JUDGMENT** |
| | Decided: September 6, 2024 |
| Appellant | |

* * * * *

D. Jeffery Rengel and Kevin J. Zeiher, for Appellees

Charles M. Murray, Joseph A. Galea, and
Daniel L. McGookey, for Appellant.

* * * * *

**ZMUDA, J.**

## I. Introduction

{¶ 1} Appellant, Estate of William E. Minshall,[1] appeals the December 2, 2021[2]

judgment of the Erie County Court of Common Pleas, Probate Division, finding that he

---

[1] William Minshall was the original appellant. On October 13, 2023, counsel for William filed a suggestion of his death. On December 29, 2023, this court granted a motion to substitute his estate, with Rosalyn Ahner as executor, as appellant.

[2] This appeal was originally submitted for our review on September 7, 2022. On December 15, 2022, we remanded this matter to the trial court for 45 days to resolve

concealed assets from the estate of his mother, Frances Minshall's estate, and awarding

damages, penalties, and attorney's fees arising from the recovery of concealed assets to

appellees, Peter and Werner Minshall. For the following reasons, we affirm, in part, and

reverse, in part, the trial court's judgment and remand this matter for further proceedings.

## II. Facts and Procedural Background

{¶ 2} This appeal arises from a lengthy and complex series of facts and litigation.

The parties' mother, Frances,[3] died on March 2, 2014. Upon her death, William, filed her

last will and testament and a related codicil in the Erie County Court of Common Pleas,

Probate Division on July 1, 2014. The will identified an inter vivos trust that Frances had

established prior to her death. The trust contained some property. The will devised that

any property not specifically bequeathed to a named beneficiary was to "pour over" into

the trust upon Frances's death.

{¶ 3} The estate was assigned Probate Division case No. 2014-1-218 and William

was appointed executor the following day. On August 5, 2014, William filed an

inventory of estate assets that consisted of a single asset—an annuity valued at

$78,795.54. On August 12, 2014, William filed a certificate of termination with the

court, pursuant to R.C. 2109.301, stating that all estate liabilities had been satisfied, taxes

---

William's Civ.R. 60 motion for relief from judgment. Following multiple extensions of
the stay to accommodate the trial court's review of that motion and the parties' continued
motion practice, we lifted the stay on April 29, 2024, after the parties advised that all
matters pending below had been withdrawn.

[3] Due to the shared surname among the individuals identified in this action, we will
identify the Minshall family members by their first names.

2.

and any fees owed had been paid, and that all estate assets had been distributed. The trial court approved the certificate that same day.

{¶ 4} Nearly five years later, on July 3, 2019, appellees Peter and Werner filed a complaint, pursuant to R.C. 2109.50, alleging that William concealed assets of Frances's estate when he filed his inventory with the trial court.[4] The concealment action was assigned case No. 2014-1-218(A). On November 4, 2019, the trial court entered an order vacating the previously approved certificate of termination. The parties then proceeded to the first day of trial on appellees' concealment action on December 5, 2019.[5] During this first day of trial, William confirmed that the only item he included in the estate inventory was his mother's annuity account. He stated that he did not include any other property that belonged to Frances at the time of her death and that he compiled the inventory based on his "memory." He also testified that at the time he prepared the inventory, he recalled "numerous items" that were in her possession but still failed to include those additional items in the inventory.

---

[4] In their briefs, Peter and Werner allege that they discovered the concealment during the discovery process in a proceeding in the Erie County Clerk of Courts general division related to William's alleged breach of fiduciary duties as trustee of Frances's trust. This, and all other related proceedings pending in the general division, are not part of this appeal.

[5] In a related proceeding, appellees' also alleged that William had concealed assets from Frances's trust. That related action was transferred to the general division of the Erie County Common Pleas Court and is not part of this appeal.

3.

{¶ 5} On the second day of trial,[6] the trial court determined that William's testimony indicated that an accounting of Frances's trust was necessary to determine what assets belonged to her trust at the time of her death and would not be subject to the concealment as alleged in the underlying action. The trial was then continued indefinitely pending resolution of that accounting.

{¶ 6} The trial resumed on June 30, 2021. At that time, the third-party administrator appointed to conduct the accounting, Richard R. Gillum, testified as to his findings. Gillum confirmed that he had completed his accounting and had filed an amended inventory identifying estate assets with the trial court. He testified that William had not objected to the amended inventory and that it included additional items not identified in William's original inventory. He testified that other than a golf cart that was no longer in operation, all other assets identified in the amended inventory were available to be reclaimed and distributed in accordance with the provisions of Frances's will and any trial court orders.

{¶ 7} After Gillum's testimony concluded, William was recalled as a witness. He did not dispute that the items Gillum identified were estate assets that were not reported on the inventory he originally filed with the trial court. Instead, he argued that he had not concealed these assets because Peter and Werner were aware of the assets at all times but

_____

[6] The trial court's December 6, 2019 order references a second day of trial. However, no transcript was provided for that day. Since our resolution of appellant's assigned errors is not dependent on any testimony that may have occurred that day, we note this omission solely for clarification of the record before us.

4.

had not made a claim for them. He also defended his failure to include those items based on the fact that he had prepared and signed the original, incorrect inventory under the advice of his counsel.

{¶ 8} At the conclusion of William's testimony, the trial court determined that he had concealed assets from the estate in violation of R.C. 2109.52. The court's finding was memorialized in a July 7, 2021 order finding him guilty of concealment and scheduling a hearing on the damages resulting from that concealment on July 20, 2021.

{¶ 9} The damages hearing ultimately took place over two days on July 20, 2021, and August 27, 2021. On the second day of the hearing, at the trial court's urging, the parties discussed a proposed resolution regarding damages. The parties began the potential resolution with a stipulation as to the value of each asset that William was found to have concealed from Frances's estate. The stipulation included the following valuations of assets included in Gillum's amended estate inventory:

1. A Bank of America checking account valued at $33,128.00;

2. A PNC Bank account valued at $24,087.89;

3. A Mass. Investors Growth check valued at $7,417.11;

4. A federal income tax refund valued at $7,117.00;

5. A golf cart valued at $250.00;

6. Proceeds from the sale of a Ford Taurus valued at $750.00;

7. A 99% interest in Erie Capital, LLC valued at $150,000.00;

8. Penn Treaty Network of America checks valued at $2,208.90;

9. An AT&T refund valued at $26.62;

10. A First Allmerica account valued at $79.86;

11. A Capital One Network account valued at $30.00; and

12. A Chase Card Services Account valued at $243.54.[7]

After stipulating to the valuation of these assets, the parties sought to resolve which party

would be assessed the costs of the action and the amount of attorney's fees to be awarded

to Peter and Werner.  After significant discussion, the trial court stated that the parties

had reached the following agreement to resolve the case:

> [A]t the close of the day, that—that any and all litigation regarding the—
> the Erie County Probate Court or any other litigation * * * except what's in
> the General Division, in exchange or a distribution of estate assets that
> [Gillum] is going to be making through the estate. * * * [T]he only thing
> that is pending here are these exceptions to the inventory, and if you can get
> those resolved—I don't see why you can't get those resolved, but we're
> resolving all of this, okay? * * * [A]ll other issues relative to this are settled
> and resolved except for the pending, which would leave: One, court costs
> paid; two, [the amount Gillum] would be paid; and, three, Court has the
> discretion to review counsel fees on the basis—on the basis of 1.5, Code of
> Professional Responsibility, and the legal requirements that—that those
> charges be fair and reasonable for legal services for actually—actually
> performed that benefit the estate[.]

The trial court then asked the parties to stipulate to a reasonable hourly rate on which to

determine any award of reasonable attorney's fees.  After some discussion, the parties

agreed that $250 was a reasonable hourly rate.

---

[7] The record shows that William did not file any objections to Gillum's amended
inventory.  While William attempted to retain his right to object to these valuations at the
damages hearing on August 27, 2021, his arguments on appeal are unrelated to the
valuation of these assets.  Therefore, we find that any challenge to Gillum's valuations
are not before the court in this appeal.

6.

{¶ 10} The trial court then asked William's counsel to restate the parties' agreement on the record. He stated that the terms of the agreement were that Gillum would be responsible for distribution of the durable assets in the estate, that the only unresolved issue related to the concealment action was a chose in action pending in the general division that was owned jointly by William and Frances—99% by Frances and 1% by William—at the time of Frances's death, that the parties each agreed to pay 1/3 of Gillum's costs and 1/3 of court costs, and that the trial court would separately determine the amount of attorney's fees owed to Peter and Werner with the hourly rate of those costs established at $250 per hour. The parties briefly argued over the splitting of court costs and payments to Gillum but the trial court stated that each party would be required to pay 1/3 of those costs.

{¶ 11} The trial court then invited William's counsel to draft and circulate a proposed judgment entry reflecting the terms of the agreement. Peter and Warner objected to the terms of the proposed judgment entry, arguing that it did not reflect the parties' entire agreement. On September 13, 2021, the trial court entered a "journal entry and order" stating that the parties had reached a settlement and outlined the basic terms of that settlement—those terms being consistent with the terms identified at the August 27, 2021 hearing. The court's entry also ordered the parties to "file a proposed Judgment Entry which incorporates the above basic terms of settlement for the Court['s] review and approval on or before September 20, 2021". Peter and Werner continued to decline executing William's proposed judgment entry, resulting in the trial court conducting a hearing on November 12, 2021.

7.

{¶ 12} At that hearing, William argued that the proposed judgment entry was the entirety of the parties' settlement and that Peter and Werner's objections were solely to add additional terms to the agreement that they failed to negotiate at the damages hearing. Peter and Werner argued that the proposed settlement could not include all necessary terms as it failed to address whether prejudgment interest would be added to the damages and did not include the mandatory ten percent penalty to be imposed on William pursuant to R.C. 2109.52. William filed a motion to enforce the settlement agreement on November 30, 2021.

{¶ 13} The trial court did not hold a hearing on William's motion to enforce the settlement agreement. Instead, the trial court entered judgment on December 2, 2021, on the concealment action. The trial court found that William was guilty of concealing $225,338.92 from Frances's estate—the total of the stipulated value of assets in the amended inventory. The court further held that Gillum had offered services with a reasonable value of $24,412.50 with additional expenses of $1,160.00 for his work identifying the estate assets. Finally, the trial court determined that Peter and Werner's co-counsel, having previously submitted itemized statements reflecting the work performed on their respective client's behalf, had earned reasonable attorney's fees in the amounts of $36,500.00 plus $665.50 in expenses, and $36,250.00, respectively. The court entered judgment against William and in favor of Frances's estate in the amount of "$225,338.92 for money and other personal property concealed, embezzled, conveyed away, or [in] the possession of [William,] together with a 10% penalty, and all costs of the Estate and these proceedings." The court also ordered William to pay Gillum's fees

8.

and expenses as well as Peter and Werner's attorney's fees in the amounts described above.

{¶ 14} On December 7, 2021, the trial court entered a "Judgment Entry *nunc pro tunc* Order." The order corrected a clerical error from its December 2, 2021, judgment entry—that is, identifying the date of the damages hearing as August 27, 2021, rather than August 2, 2021, as described in the original judgment. The order also denied William's motion to enforce a settlement agreement. In doing so, the trial court cited *Art v. Erwin,* 2009-Ohio-4306 (10th Dist), which held that concealment actions were quasi-criminal in nature and, therefore, could not be settled by the parties but had to be resolved by the trial court with a finding of guilt and a calculation of damages. For this reason, the trial court denied William's motion to enforce the settlement as a matter of law.[8]

### III. Assignments of Error

{¶ 15} Appellant timely appealed and assigns the following errors for our review:

1. The trial court erred in denying [William's] motion to enforce settlement;

2. The trial court erred in its assessment of damages against [William]; and

---

[8] Although not raised by any party, we note the procedural defect in the trial court's denial of William's motion after it had already rendered a final judgment. A trial court generally loses jurisdiction over a case after issuing its final order. *State ex. real. The Kelleys Island School District Board v. The Ohio Department of Education,* 2024-Ohio-285, ¶ 45 (6th Dist.). Ostensibly, the trial court's post-judgment denial of William's motion was a nullity. *Id.* However, since the trial court did not rule on William's motion prior to entering final judgment, it is considered denied. *Webber v. Ohio Department of Public Safety,* 2017-Ohio-9199, ¶ 27, fn. 1 (10th Dist.). Therefore, William's assignment of error to the trial court's denial of his motion is properly before this court, albeit through a slightly different procedural posture than that identified by the parties.

9.

3. The trial court erred in awarding Peter's and Werner's attorneys fees.

## IV. Law and Analysis

### a. The Trial Court did not err in denying William's Motion to Enforce Settlement

{¶ 16} In his first assignment of error, William argues that the trial court erred in denying his motion to enforce the settlement agreement. Specifically, he argues that the trial court erroneously determined that concealment actions are not subject to settlement as described in *Art v. Erwin,* 2009-Ohio-4306 (10th Dist.). Instead, he argues that concealment actions are indeed subject to private settlement when that settlement is reached at the invitation of the trial court and approved on the record.

{¶ 17} A trial court's decision on a motion to enforce a settlement agreement is a matter of law that we review de novo. *Erie Capital, LLC v. Barber,* 2021-Ohio-2258, ¶ 14 (6th Dist.). We find that because concealment actions are not subject to settlement by the parties as a matter of law, the trial court did not err in denying William's motion to enforce the settlement agreement.

{¶ 18} To determine whether a concealment action may be settled by the parties, we must examine the nature of concealment actions. In *Art,* the Tenth District Court of Appeals was asked to determine whether the underlying concealment action could be referred to arbitration because one of the estate assets, a securities account, had an arbitration clause as part of its underlying terms. *Id.* at ¶ 8. The court described concealment actions as "a special proceeding which is inquisitorial in nature and involves

10.

a charge of wrongful or criminal conduct on the part of the accused." *Id.* at ¶ 34. "In such a proceeding, a finding of guilty or not guilty is required with the imposition of a penalty upon a finding of guilty." *Id.* Put simply, a concealment action is "a summary means, inquisitorial in nature, to recover specific property or proceeds or value thereof belonging to [an estate],[9] title to which was in a decedent at [their] death or in a ward when his guardian was appointed; or to recover property belonging to [an estate], concealed, taken or disposed of after the appointment of the fiduciary." *Art* at ¶ 33, citing *In re. Estate of Black,* 145 Ohio St. 405 (1945). It is not a proceeding to be used by individuals "to collect a debt, obtain an accounting or adjudicate rights under a contract" and "bears little resemblance to a civil action, either in purpose or execution. It is not a matter of a dispute between two private parties[.]" *Id.* at ¶ 36.

{¶ 19} The court further held:

[Concealment actions are] not a matter of dispute between two private parties, such as (in this case) a broker and a surety. It is a summary, inquisitorial, quasi-criminal proceeding which, by the plain language of R.C. 2109.50, must be conducted not merely *in* the probate court, but by the probate court. In essence, the accused is one party and the court itself, as the superior guardian of the ward, is the other. The fact that an "interested party," such as a surety or a family member or heir of the ward, may bring a complaint to begin the inquisitorial process does not, in the long-held view of the Supreme Court of Ohio, transform it into a matter akin to a private dispute and a controversy thus amenable to resolution by private arbitration. The reasons primarily advanced in favor of private arbitration, which are increased efficiency and decreased cost, would not be advanced by referring concealment actions to arbitration.

---

[9] The estate in *Art* was a trust estate. R.C. 2109.50 applies to "an estate, a testamentary trust, or a guardianship."

*Id.*  In light of the nature of concealment proceedings, the Tenth District Court of Appeals held that concealment actions could not be referred to arbitration since utilizing alternative dispute resolution would be in contravention of R.C. Chapter 2109.  *Id.*  We find the Tenth District's analysis is applicable to the parties' attempt to reach a settlement in this action.

{¶ 20} It is undisputed that Peter and Werner were interested parties that first alleged William's concealment of estate assets.  While their interests certainly include identifying any assets owned by Frances at the time of her death, that interest does not raise them to the level of parties to a private dispute with William.  Instead, when they alleged William's wrongdoing, R.C. Chapter 2109 tasked the trial court with conducting the inquisitorial concealment proceedings and determining William's guilt or innocence.  While the issue in *Art* was whether the matter could be referred to arbitration, we see no distinction between arbitration and the trial court's attempts to encourage a settlement here.  In both instances, the interested parties' settlement of the concealment claim as private parties would result in the usurpation of the probate court's statutory obligation to resolve the action in accordance with the proceedings outlined in R.C. 2109.50.  Therefore, while the trial court's attempts to facilitate a settlement in this case may have been well-intentioned, they were not authorized by law—an error the trial court apparently realized at the time of its December 7, 2021 order denying William's motion.

{¶ 21} Put simply, the nature of concealment actions require probate courts to adjudicate the accused's conduct in a quasi-criminal proceeding.  The interested parties that first allege wrongdoing are not elevated to the status of a party to the action that can

12.

settle the claims with the accused. For these reasons, we find that the trial court did not err in denying William's motion to enforce the settlement agreement as no such agreement was permitted as a matter of law.

{¶ 22} To avoid this result, William cites several cases that purportedly show that concealment actions are indeed subject to settlement among the parties. Each of these cases is readily distinguishable. In *In re. Estate of Schoenman,* 2011-Ohio-5243 (5th Dist.), the trial court's decision awarding attorney's fees in accordance with the parties' proposed settlement agreement was deemed improper because the trial court had not previously made a guilty finding. Whether the settlement agreement itself was valid was not at issue. Neither *In re. Estate of Lewis,* 2001-Ohio-2546 (4th Dist) nor *In re. Estate of Stamm,* 2006-Ohio-5176 (11th Dist.) involved the settlement of a concealment action. As a result, they are entirely inapplicable to our analysis here. Finally, in *Estate of Millstein,* 2021-Ohio-4610 (8th Dist.), the parties had entered into a prior settlement agreement that prohibited any further disputes related to a separate probate action. The Eighth District Court of Appeals held that the term "dispute" in the parties' agreement encompassed future concealment actions. In reaching this conclusion, the Eighth District reaffirmed that concealment actions were not an action between private parties. *Id.* at ¶ 55. However, the court held that a concealment claim did fall within the broad prohibition of continued "disputes" in the parties' prior settlement agreement and, as a result, held that the concealment action could not be maintained. *Id.* at ¶ 65. Importantly, the holding in *Millstein* prohibited the initiation of a concealment action under the terms of a prior settlement agreement between the parties. That limited holding

13.

does not support the premise of upholding a settlement between private parties in a pending concealment action. As a result, it does not instruct our analysis here.

{¶ 23} In sum, the parties to the present action were not authorized to settle Peter and Werner's concealment claims as a matter of law. Therefore, we find that the trial court did not err in denying William's motion to enforce the settlement as a matter of law and his first assignment of error is found not well-taken.

**b. The trial court did not err in assessing judgment against William.**

{¶ 24} In his second assignment of error, William argues that the trial court erred in awarding damages against him because Frances's estate did not actually suffer any damages based on his concealment of assets. Essentially, he argues that because any assets Frances owned at the time of her death that were not specifically bequeathed to an individual beneficiary were to be poured over into Frances' trust, that his purported placement of the concealed assets into the trust did not damage the estate. As a result, he argues, the award of damages against him was invalid. William's argument misstates the applicable law to the limited nature of the concealment action and, therefore, is without merit.

{¶ 25} R.C. 2109.52 states, in relevant part, that if the accused in a concealment action is found guilty, the probate court "shall assess the amount of damages to be recovered[.]" The amount of the judgment rendered against the guilty party is determined by whether they are the fiduciary for the estate. A "fiduciary" includes executors of a testamentary estate. R.C. 2109.01; *In re Estate of Usiak,* 2007-Ohio-3038, ¶ 35 (7th Dist.). If the guilty party is a fiduciary, the probate court shall render judgment

14.

"against the fiduciary for the amount of the moneys or the value of the personal property or choses in action concealed, embezzled, conveyed away, or held in possession, together with penalty and costs[.]" R.C. 2109.52. However, if they are not the fiduciary, the probate court "shall render judgment in favor of the fiduciary * * * for the amount of the moneys or value of the personal property or choses in action concealed, embezzled, conveyed away, or held in possession, together with ten percent penalty and all costs of the proceeding or complaint, *except that the judgment shall be reduced to the extent of the value of anything specifically restored or retuned in kind as provided in this section*." *Id*. (emphasis added). Therefore, under the plain language of the statute, the reduction in judgment for assets that are restored or returned to the estate is not applicable when the fiduciary of an estate is found guilty of concealing its assets.

{¶ 26} Here, it is undisputed that William was the executor of Frances's estate and, therefore, a fiduciary under the statute. The trial court, relying on the parties' stipulation as to the value of the concealed assets at trial, determined that William concealed $225,338.92 from Frances's estate. Pursuant to R.C. 2109.52, the trial court was obligated to enter judgment against William in that amount plus a 10% penalty and costs. William, as fiduciary, was not entitled to any reduction in the amount of the judgment rendered against him pursuant to R.C. 2109.52 based on the alleged recovery of those assets by the estate through their placement in Frances's trust.[10] Therefore, the trial

---

[10] William argues that all of the cash assets he was determined to have concealed from Frances's estate were placed into Frances's trust and are recoverable, resulting in a lack of damage to the estate from their concealment. Peter and Werner dispute this

15.

court did not err in rendering judgment against William for the full amount of the concealed assets.

{¶ 27} Certainly, whether the trust has been made whole, or whether those assets have been properly recovered by the estate may be issues that need to be addressed in future proceedings. However, as both parties acknowledge, this concealment action is a limited proceeding and any litigation related to Frances's trust is outside the scope of this appeal. The underlying concealment action was "a summary means, inquisitorial in nature, to recover specific property or proceeds or value thereof belonging to [Frances's estate]." The trial court rendered its judgment on that limited proceeding in accordance with the statute and William has not identified any bases on which the trial court erred. For these reasons, we find William's second assignment of error not well-taken.

### c. The trial court erred in granting Peter and Werner's attorney's fees without first conducting a hearing before granting the award.

{¶ 28} In his third assignment of error, William argues that the trial court erred in granting Peter and Werner their attorney's fees without first conducting a hearing. He argues that Sup.R. 71(C) required the trial court to conduct an evidentiary hearing prior to awarding attorney's fees. Since no hearing was held, he argues, the trial court erred in awarding Peter and Werner their attorney's fees.

_____

conclusion, arguing that whether the estate assets were ever placed into the trust is an open question to be determined in litigation pending in the General Division of the Erie County Court of Common Pleas. Because the statute does not entitle William, a fiduciary, to an offset in the judgment for any assets that may be recoverable from the trust, and because the trust matter is not part of this appeal, we do not address the merits of the parties' arguments on this issue.

16.

**{¶ 29}** We review the award of attorney's fees for an abuse of discretion. *Dunbar v. Dunbar,* 68 Ohio St.3d 369 (1994). An abuse of discretion occurs when the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1993). "An abuse of discretion may be found where the trial court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *B.M. v. H.L.*, 2015-Ohio-2444, ¶ 8 (6th Dist.), citing *Thomas v. Cleveland,* 2008-Ohio-1720 (8th Dist.).

**{¶ 30}** "It is well-settled that attorney fees are not recoverable except when there is a specific statutory provision allowing such or where "the losing party has acted in bad faith, vexatiously, wantonly, obdurately or for oppressive reasons." *In re. Estate of Brate,* 2008-Ohio-3517, ¶ 8 (12th Dist.). There is no specific provision in R.C. 2109.52 that authorizes the award of attorney's fees. *Id.* at ¶ 9. However, the trial court held in its December 2, 2021 judgment entry that William had acted in bad faith in concealing the assets from the estate, thereby authorizing an award of attorney's fees.

**{¶ 31}** Sup.R. 71(A), specifically applying to probate actions, states that "attorney fees in all matters shall be governed by Rule 1.5 of the Ohio Rules of Professional Conduct." Additionally, Sup.R. 71(C) states that "[a]ttorney fees may be allowed only if there is a written application that sets forth the amount requested and will be awarded only after proper hearing, unless otherwise modified by local rule." The Erie County Local Rules do not dispense with the hearing requirement identified in Sup.R. 71(C). It is undisputed that the trial court did not conduct a hearing prior to awarding Peter and Werner's attorney fees. William argues that the trial court's failure to conduct a hearing

17.

constituted an abuse of discretion.  Peter and Werner argue that the trial court was not obligated to conduct a hearing and, even if it was, that William waived that hearing.  Neither argument is persuasive.

{¶ 32} First, Peter and Werner argue that Sup.R. 71 is limited only to an administrator of an estate's request for attorney's fees.  Indeed, Sup.R. 71(B), a separate subsection of the rule, applies specifically to an administrator's request for attorney's fees.  However, subsections (A) and (C), the sections on which William bases his argument, contain no such restriction.  These sections have been previously held to apply to concealment actions and not, as Peter and Werner argue, only an administrator's request for attorney's fees for administration of an estate.  *See Neuman v. Trice,* 2012-Ohio-4206, ¶ 44 - 45.  Additionally, to limit Sup.R. 71 to only attorney fee requests for the administration of an estate would require this court to ignore the provision in Sup.R. 71(A) stating that attorney fees "in all matters" shall be governed by Rule 1.5 of the Ohio Rules of Professional Conduct.  Therefore, Peter and Werner's argument that the trial court was not obligated to conduct a hearing prior to awarding their fees is without merit.

{¶ 33} Peter and Werner next argue that William waived his right to a hearing at the November 12, 2021 hearing.  They cite a portion of the transcript in which the trial court asked William if he wanted a hearing and William responded "I do not want a hearing, your honor[.]"  Absent from Peter and Werner's citation, however, is the context in which William declined a hearing.  Throughout the November 12, 2021 hearing, William argued that the parties had entered into a settlement agreement that did not include an award of attorney's fees.  His statement to the trial court that he did not want a

18.

hearing on attorney's fees came immediately after his argument that the parties were bound by the settlement agreement outlined in the trial court's September 14, 2021 entry and did not include attorney's fees. His full response to the trial court's inquiry regarding an evidentiary hearing was "I do not want a hearing, your honor. I believe that we have an outline of an agreement. I believe that the parties and the court should stick to the agreement." In the context of the hearing, William was not waiving his right to a hearing on attorney's fees in general but was advancing his argument that there should be no hearing because the parties should abide by settlement agreement. We do not believe this constitutes a waiver of William's right to a hearing before the trial court awarded attorney's fees to Peter and Werner. *See Revocable Living Trust of Mandel v. Lake Erie Util. Co.,* 2016-Ohio-1396, ¶ 15 (6th Dist) ("a waiver is an intentional relinquishment of a known right").

{¶ 34} Having reviewed the record, we find that the trial court was obligated to conduct a hearing prior to awarding Peter and Werner their attorney's fees. William did not waive his right to that hearing and the trial court abused its discretion in making an award without first conducting a hearing. For these reasons, we find William's third assignment of error well-taken.

## V. Conclusion

{¶ 35} We find William's first and second assignments of error not well-taken. We find William's third assignment of error well-taken. Therefore, we affirm the trial court's December 2, 2021 judgment as to its denial of William's motion to enforce settlement and its calculation of damages against him. We reverse the trial court's

19.

judgment as to its award of Peter and Werner's attorney's fees. We remand this matter to the trial court for further proceedings consistent with this opinion.

{¶ 36} The parties are ordered to split the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                  _____

                                                JUDGE

Christine E. Mayle, J.                   _____

Gene A. Zmuda, J.                      JUDGE
CONCUR.

                                                _____
                                                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.